```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON
```

IDA EVANS,

    Plaintiff,

v.                                      Civil Action No. 2:12-cv-6167

K-VA-T Food Stores, Inc.
and doing business as Food City and
DONALD SAMSON in his capacity as
manager and supervisor of
K-VA-T Stores, Inc. dba Food City,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the motion by plaintiff Ida Evans to remand, filed October 12, 2012.  For the reasons below, the court finds that Evans improperly joined the nondiverse defendant Donald Sansom (misspelled in the complaint as "Donald Samson"), and the court denies the motion.

### I. Background

Evans commenced this action in the Circuit Court of Mingo County, West Virginia on January 13, 2012.  She is a resident of Mingo County, West Virginia. Compl. ¶ 1.  The defendant K-VA-T Food Stores, Inc. ("Food City"), who does business as Food City, is a foreign corporation with a principal

place of business in Pikeville, Kentucky.  Id. ¶ 2.  Donald Sansom is a resident of Mingo County, West Virginia and a manager and supervisor of Food City at its South Williamson, Kentucky store.  Id. ¶ 3.  In an affidavit, Sansom clarifies that he is the assistant manager.  Not. Removal Ex. D, at 1.

The facts, as set forth in the complaint, are as follows.  On or about January 25, 2011, Evans presented a prescription for a gastrointestinal cocktail mixture to the pharmacy of Food City in South Williamson, Kentucky.  Compl. ¶ 4.  Rhonda Pinion, a Food City pharmacy technician, added 30 milliliters of Donnatal into the mixture when the prescription required only 5 milliliters.  Id. ¶ 6; Mot. Remand 3.  As a result of the excess Donnatal, Evans suffered a drug overdose.  Compl. ¶ 6.  She suffered "permanent injuries to various parts of her body," "past and present medical expenses," and "pain and aggravation, and inconvenience."  Id. ¶ 8.

Evans' complaint alleges that Food City "by and through its agents and employees negligently and carelessly" filled the prescription.  Id. ¶ 5.  It further alleges that Sansom, "as a manager and supervisor at Food City, was negligent and careless in his duty to supervise and oversee the agents of the Defendant, Food City."  Compl. ¶ 7.

On September 4, 2012, the defendants obtained written discovery responses from Evans concerning her grounds for

2

allegations of negligence against Sansom.  Consistent with her complaint, Evans responded that Sansom "negligently allowed the improperly filled prescription to be distributed to the Plaintiff."  Not. Removal ¶ 10.  On September 18, 2012, the parties deposed pharmacist Lisa Bowens.  Under questioning by Evans' counsel, Bowens gave the following testimony concerning the relationship between the Food City store management and the professional pharmacy:

> Q. Do the employees of the pharmacy, do they report to any of the store managers?
>
> A. I guess we all kind of do.  They mostly report to me, but they can report to Susan too or Donald or whoever's there.
>
> Q. Okay.  Susan, what's Susan's last name?
>
> A. Maynard.
>
> Q. Susan Maynard.  And Donald Samson?
>
> A. Uh-huh.
>
> Q. Do you report to Donald Samson?
>
> A. I mostly report to Susan.
>
> Q. Okay.  What's Susan's title?
>
> A. She's the store manager.
>
> Q. And Donald, he's the assistant manager?
>
> A. As far as I know, yeah.
>
> Q. Okay. What types of things would you report to Susan?
>
> A. I mean usually if I need -- like when I had to replace Rhonda I had to talk to her in order to get another employee, if somebody goes over on their hours I have to talk to her about their hours, I mean mostly the business end of the pharmacy.

3

>    Q. Okay.  So the store side of Food City is responsible for payroll and human resource types of --
>
>    A. Right.
>
>    Q. Okay.  You alone do not have the ability or authority to hire an individual?
>
>    A. I don't, no.

Bowens Dep. 19-20.  The defendants' counsel asked Bowens a single follow-up question:

>    Q. Does the management at Food City, either the manager or the assistant manager, have any responsibility for the management of the professional pharmacy aspect?
>
>    A. No, no, none at all, no.

Id. at 24-25.

In light of this testimony, and having ascertained that Sansom was an assistant manager and that the actual manager at the time of the incident was Susan Maynard, a Kentucky resident, the defendants became convinced that Evans had fraudulently joined Sansom to destroy diversity.  On October 2, 2012, the defendants removed the case to federal court, asserting fraudulent joinder and invoking the court's diversity jurisdiction.  See 28 U.S.C. § 1332(a)(1).  On October 12, 2012, Evans moved to remand on the ground that the defendants failed to establish fraudulent joinder.

## II. The Governing Standard

"Except as federal law may otherwise provide, when a defendant removes a state civil action to federal district court, federal removal jurisdiction exists if the action is one 'of which the district courts of the United States have original jurisdiction.'"  In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006) (quoting 28 U.S.C. § 1441(a)).  Federal district courts possess original jurisdiction over all actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).  Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable

standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiffs favor.'" Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232–33).

As Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. See Hartley, 187 F.3d at 425. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> [A] jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . uncertain questions of law and fact. . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules. . . .
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425–26 (citations omitted).

In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." Mayes, 198 F.3d at 464 (internal quotations omitted).  The district court may consider affidavits and deposition transcripts submitted by the parties.  See Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).[1]  The court may reject post-removal filings "when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."  Griggs v. State Farm Lloyds, 181 F.3d 694, 700 (5th Cir. 1999) (citation omitted).

### III. Discussion

Evans appears not to dispute that the amount in controversy eclipses the $75,000 jurisdictional threshold.  The defendants attached interrogatory responses to their notice of removal in which Evans claims $11,999.40 in medical expenses arising from the accident and $150,000.00 in special damages. Not. Removal, Ex. B at 4.

Since the defendants do not allege any fraud in the pleading, the only question for fraudulent joinder purposes is whether Evans has any possibility of recovery in state court

---

[1] Our court of appeals has cited Crowe in support of this approach, albeit in an unpublished opinion.  See Boss v. Nissan N. Am., Inc., 228 F. App'x 331, 336 (4th Cir. 2007).

against the nondiverse defendant, Donald Sansom. The complaint asserts one claim against Sansom: that "as a manager and supervisor at Food City" he "was negligent and careless in his duty to supervise and oversee the agents of the Defendant, Food City, all of which was the direct and proximate cause of the damages to the Plaintiff." Compl. ¶ 7.

The defendants contend that Evans' negligence claim against Sansom is untenable because, as Lisa Bowens testified, the assistant store manager has no supervisory or oversight responsibility over the professional pharmacy. Not. Removal ¶ 17. They attach an affidavit in which Sansom confirms that he "never had the responsibility or duty to supervise or oversee the professional activities of any Food City pharmacist or the Food City pharmacy." Id. Ex. D, ¶¶ 3-5. Since Sansom has no oversight responsibilities over the pharmacy, the defendants assert that he owed no duty to Evans related to her prescription and could not have been negligent. Id. ¶ 19. The defendants contend that "the only possible reason" that Evans would have sued the assistant store manager instead of the store manager is that, as a resident of Kentucky, the store manager would not "serve Plaintiff's purpose of defeating diversity." Id. ¶ 17.

In seeking remand, Evans emphasizes Bowens' testimony that pharmacy employees report to the store manager or assistant manager. Mot. Remand 3. Evans also refers to deposition

testimony in which Rhonda Pinion admitted that she had been criminally prosecuted for altering a prescription label. Pinion Dep. 9-10. Pinion testified that the prosecution resulted in her Pharmacy Technician Certification being revoked. Id. Evans argues that this criminal history suggests Sansom's negligence "regarding his involvement in hiring Rhonda Pinion and assigning her to perform the duties" that caused the injury. Mot. Remand 3. Evans, however, provides no evidence that indicates Sansom had any involvement in Rhonda Pinion's hiring. Evans states, in her motion, only that it is her "position that [hiring] decisions would be made by the store management which clearly includes the Defendant, Donald Samson." Id.

In response, the defendants provide an additional affidavit in which Sansom states that he has "never participated in any way in the hiring or firing of pharmacy technicians within the professional pharmacy." Opp'n Mot. Remand Ex. A, ¶ 6. He adds that he "has no input in or responsibility for, the hiring of any pharmacist or the pharmacy technicians . . . , including Rhonda Pinion." Id. The defendants argue that Evans "cherry picked" comments from Bowens' deposition in asserting Sansom's involvement with the pharmacy. Opp'n Mot. Remand 2.

The court finds Sansom's joinder to be improper. Evans has no hope of recovery from Sansom for negligent supervision. "In order to establish a prima facie case of

negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, Parsley v. Gen. Motors Acceptance Corp., 167 W. Va. 866, 866, 280 S.E.2d 703, 704 (1981). It is uncontroverted that the Food City store management, including Sansom as the assistant manager, had no responsibility for the execution or management of the pharmacy's professional activities. Absent such a role, Sansom could not have owed or broken any duty to Evans with respect to her improperly filled prescription.

Evans' additional assertion, first made in her motion to remand, that Sansom negligently hired Pinion is similarly unavailing. The complaint sets forth neither a claim for negligent hiring nor allegations regarding any authority Sansom had over personnel decisions. As it was not presented in the operative state court filing, the court need not consider the negligent hiring claim. See Griggs, 181 F.3d at 700.

The court nevertheless observes that, even treating Evan's negligent hiring claim as properly asserted, she has failed to demonstrate any possibility of relief. There is simply no allegation in the complaint or any evidence indicating that Sansom had authority over hiring decisions, let alone for the specific decision to hire Rhonda Pinion. Bowens' deposition

testimony, on which Evans relies, attributes hiring authority only to manager Susan Maynard.  Evans' suggestion in her briefing that Sansom would have also been involved in the hiring of Rhonda Pinion is pure conjecture and is refuted by Sansom's affidavit.  Evans filed no reply to contest the affidavit or to offer contrary evidence.

No issue of fact remains as to Sansom's lack of involvement in Rhonda Pinion's hiring.  See Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005) ("[T]here must be some question of fact before the district court can resolve that fact in the plaintiff's favor.  In this case, for example, the Plaintiffs did not dispute [the nondiverse defendant's] sworn statement that he never promoted or sold the drug Redux.  With no response from the Plaintiffs, there was no question of fact for the court to resolve. . . .  When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."); Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (analogizing fraudulent joinder with summary judgment and stating that the court does not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994))).

11

The court concludes that Evans has no possibility of relief against the nondiverse defendant Sansom.  Inasmuch as Evans' claims exceed the amount in controversy requirement, the court concludes that diversity jurisdiction lies.

The court having found that Evans improperly joined Sansom, Sansom's dismissal from this action is appropriate.  See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); Mayes, 198 F.3d at 461.

IV.

Based upon the foregoing discussion, it is, accordingly, ORDERED that Evans' motion to remand be, and it hereby is, denied.

It is further ORDERED that Donald Sansom be, and he hereby is, dismissed from this action.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

ENTER: April 16, 2013

John T. Copenhaver, Jr.
United States District Judge